Evan Goldstein (#011186)
**Goldstein Woods & Alagha**
706 E Bell Rd., Ste. 200
Phoenix, AZ 85022
Telephone: 602.569.8200
Email: egoldstein@gwalawfirm.com

Sam Saks (#024260)
**Guidant Law**
402 E Southern Avenue
Tempe, AZ 85282
Telephone: 602.888.0725
Email: sam@guidant.law
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kay Franklin, <br><br> Plaintiff, <br><br> v. <br><br> CSAA General Insurance Co., <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

. . .

. . .

. . .

. . .

. . .

. . .

. . .

COMPLAINT
**011064-11/1862632 V1**
116923768.2

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | PARTIES | 3 |
| III. | JURISDICTION AND VENUE | 3 |
| IV. | GENERAL ALLEGATIONS AS TO ARIZONA LAW | 4 |
| V. | CSAA IMPROPERLY REFUSES TO DISCLOSE AND STACK FRANKLIN'S COVERAGE | 6 |

FIRST CLAIM FOR RELIEF ............................................................................................ 13
SECOND CLAIM FOR RELIEF ....................................................................................... 14
THIRD CLAIM FOR RELIEF ........................................................................................... 15
PRAYER FOR RELIEF ..................................................................................................... 17

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

COMPLAINT - 1 -
011064-11/1862632 V1
116923768.2

# I. INTRODUCTION

1. Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims, unless the insurer employs one of two easy methods to avoid stacking – either (1) including a "statement" in the policy "inform[ing]" the insured of her "right to select one policy or coverage" as "applicable to any one accident," or (2) sending the insured, within thirty days of being notified of the accident, written notice of her "right to select one policy or coverage." A.R.S. § 20-259.01(H). Here, the insurer did neither.

2. "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages can exist, and those coverage limits can be added together to provide "stacked" benefits for a single claim. In other words, each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

3. When an insured is injured, insurance companies have a duty to find coverage for the insured, to identify available coverages and limits, to inform the insured accurately about available coverages and benefits, to reasonably investigate the claim, to

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

construe the policy in accordance with known law, and not to misrepresent pertinent policy provisions or coverages.

4. In handling UM/UIM claims for Plaintiff, Defendant CSAA General Insurance Company ("CSAA") has breached all of these duties as well as the policy itself. CSAA applied just a single UM/UIM coverage limit to Plaintiff's claim even though CSAA neither inserted the statutorily-required "right to select" statement in its policy, nor advised Plaintiff of that right by letter. CSAA, therefore, was responsible for stacking, and for disclosing and providing UM/UIM coverage up to the stacked limits required by Arizona law and the policy, but failed to do so. Having failed to utilize either anti-stacking option permitted by Arizona law and having failed to disclose the existence of stacked coverages, CSAA breached its contractual and legal duties to Plaintiff and failed to adjust her claim properly.

5. Plaintiff Kay Franklin, an insured under the CSAA policy purchased by her mother Kathy Lynn Bernhardt, brings this action pursuant to (a) 28 U.S.C. § 2201 & 2202 for a declaratory judgment regarding her rights under her CSAA auto insurance policy ("the CSAA Policy") and (b) state law based on diversity jurisdiction for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II.   PARTIES

6. Plaintiff Kay Franklin is a resident and citizen of Arizona. She is the daughter of the decedent, Kathy Lynn Bernhardt. She is the sole statutory claimant for the wrongful death of Ms. Bernhardt under Arizona law, including A.R.S. §§ 12-611 and 12-612.

7. Defendant CSAA is an insurance company incorporated under the laws of Indiana, with its principal place of business in California.

## III.   JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $50,000 in stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant are citizens of different states. Plaintiff is a

COMPLAINT - 3 -
011064-11/1862632 V1
116923768.2

citizen of Arizona, and CSAA is a citizen of Indiana and California (where it is incorporated and has its principal place of business).

9. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the CSAA Policy was issued in this District.

10. Whenever it is alleged in this Complaint that CSAA did any act or thing, it is meant that CSAA and its agents, officers, servants, employees or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization or ratification of CSAA or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of CSAA and its officers, agents, servants, employees or representatives. Specifically, CSAA is liable for the actions of its affiliates, officers, agents, servants, employees and representatives.

### IV.   GENERAL ALLEGATIONS AS TO ARIZONA LAW

11. Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

12. Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174 P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197, quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000).

13. Subsection (H) of A.R.S. § 20-259.01 allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer

receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." A.R.S. § 20-259.01(H).

14. "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018).

15. The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

16. "Subsection (H) is not exclusively limited to circumstances where multiple policies exist—it applies to 'multiple policies or coverages.'" *Hoelbl v. GEICO*, No. 1 CA-CV 11-0703, 2012 WL 5589909 (Ariz. App. Nov. 15, 2012), *review denied* (Apr. 23, 2013); *see also GEICO v. Tucker*, 71 F. Supp. 3d 985 (D. Ariz. 2014) (following *Hoelbl*, and explaining that for applying subsection (H) "it did not matter if those multiple vehicles were covered by the same policy or separate policies.").

17. Under Subsection (H), "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages).

18. Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiff. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

19. The contractual covenant of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[2]

### V. CSAA IMPROPERLY REFUSES TO DISCLOSE AND STACK FRANKLIN'S COVERAGE

20. On March 29, 2021, John J. Rowland was operating a motorcycle near the intersection of University Drive and 110th Street in Mesa, Arizona, traveling west on University Drive.

21. According to reports from the Maricopa County Sherriff's Office, Mr. Rowland was driving while impaired by THC and traveling at a speed of 98 mph in a 45-mph zone.

22. Plaintiff's 69-year-old mother, decedent Kathy Lynn Bernhardt, was operating a 2015 Toyota Sienna, VIN 5TDKK3DC2FS613199 ("the Sienna") near the same intersection, traveling south on 110th Street. The time was approximately noon and she was on her way to church that day.

23. Ms. Bernhardt began her left turn through the intersection at approximately 14 mph. Mr. Rowland's motorcycle was 760 feet away when Ms. Bernhardt began her left turn.

24. During the turn, the motorcycle collided with the driver's door of Ms. Bernhardt's Sienna. The motorcycle struck the Sienna with so much force that it rolled it onto its side.

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

25. The Sherriff's Office found Mr. Rowland to be at fault in the accident due to his excessive speed and impairment. No improper action was found on the part of Ms. Bernhardt.

26. Mr. Rowland was negligent in causing the accident. Mr. Rowland's negligence was the sole cause of the accident.

27. As a result of the accident, Ms. Bernhardt sustained severe blunt-force injuries and was transported to the hospital, where she was pronounced deceased.

28. Given the severity of Ms. Bernhardt's injuries and her death as a result of the accident, Mr. Rowland was underinsured as to Plaintiff Franklin. *See* A.R.S. § 20-259.01(G).

29. At the time of loss, Mr. Rowland was insured under a GEICO automobile policy with $25,000 in per-person bodily injury liability coverage. GEICO tendered and Plaintiff accepted payment of this policy limit.

30. Plaintiff Franklin's damages here are significantly greater than $25,000.

31. To protect herself and other insureds in the event a tortfeasor was uninsured or underinsured, Ms. Bernhardt purchased UM/UIM insurance from CSAA. At the time of loss, Ms. Bernhardt was insured under a CSAA Policy (Certified Copy of Policy No. AZSS204925140, attached as Exhibit 1). The CSAA Policy insured two vehicles: the Sienna and a 2006 Subaru Legacy Station Wagon, VIN no. 494BP85C664322709. Each vehicle's coverage provided Ms. Bernhardt with UIM benefits of $50,000 per person, $100,000 per accident.

32. Plaintiff Franklin's damages for the wrongful death of Ms. Bernhardt attributable to Mr. Rowland's fault exceed the combined amounts of Mr. Rowland's bodily injury liability coverage and the stacked UIM coverages on the two vehicles insured under the CSAA Policy.

33. In the CSAA Policy, CSAA agreed to pay "for damages . . . which an **insured person** is legally entitled to recover from [an underinsured motorist] because of **bodily injury** sustained by an **insured person** . . ." "**Insured person**" is defined to include "**you**"

and "any person who is entitled to recover damages covered by this Part III, because of **bodily injury** to **you**." "**You**" by definition includes Ms. Bernhardt, who was the named insured. "**Bodily injury**" by definition includes death. Ms. Franklin, as the sole statutory claimant for the wrongful death of Ms. Bernhardt under Arizona law, is an "**insured person**" as defined in the CSAA Policy. *See* Exhibit 1 (emphasis in original).

34. On October 6, 2021, Plaintiff Franklin, through her counsel, sent CSAA an email asking CSAA to "[p]lease disclose all applicable UIM limits under your policy and Arizona law." CSAA responded by email producing the declarations page for the CSAA Policy. On October 8, 2021, Plaintiff Franklin, through her counsel, sent another email asking CSAA "disclose and tender all applicable UIM coverages and limits under your policy and Arizona law." CSAA responded by email that "[t]his is the only available policy with CSAA and the UIM limits are $50,000." *See* Exhibit 2.

35. On December 8, 2021, CSAA wrote Ms. Franklin's counsel confirming that it had "placed 100% liability against John Rowland for this accident," and inviting a settlement demand "so that [CSAA] can move forward with the evaluation of [Plaintiff's] Underinsured Motorist claim." Exhibit 3.

36. On March 2, 2022, Ms. Franklin's counsel wrote CSAA providing the death certificate for Ms. Bernhardt and information about Ms. Franklin's damages, and demanding that CSAA identify, disclose and tender all UIM coverages applicable to this accident under the CSAA Policy. Specifically, Ms. Franklin's counsel stated: "Ms. Bernhardt had two vehicles insured with UIM coverage under her CSAA policy at the time of this loss. Plaintiff Franklin's damages for wrongful death clearly exceed the combined UIM policy limits on both covered vehicles. Please identify, disclose and tender all UIM coverages and limits applicable to this accident under that policy." Exhibit 4.

37. CSAA responded by denying the existence of stacking under the CSAA Policy: "I am showing they only have one policy with us. There are two vehicles listed on the same policy, but there is no stacking of coverages. One line of UIM coverage applies on the policy, not per vehicle." Exhibit 5.

38. On March 8, 2022, CSAA wrote Ms. Franklin's counsel, "tendering our UIM limits of $50,000.00 available for this loss," and requesting "Release instructions." CSAA tendered only the UIM coverage limit associated with one insured vehicle under the CSAA Policy and failed to inform Plaintiff Franklin that the UIM coverages for both insured vehicles are subject to stacking. See Exhibit 6.

39. That same day, CSAA sent Ms. Franklin's counsel an email regarding its tender of the $50,000 UIM benefit. In exchange for payment, CSAA asked Ms. Franklin to execute a "Release of Underinsured Motorist Coverage," pursuant to which Ms. Franklin would "hereby release and forever discharge [CSAA] for the Claim," and "defend, indemnify and hold harmless" [CSAA] against various "claims, liens, demands, actions and causes of action." "Claim" was defined as Plaintiff's "claims for underinsured motorist ("UIM") coverage under the policy of automobile insurance issued by [CSAA] for damages allegedly suffered as a result of the Accident." *See* Exhibit 7 (email & release).

40. CSAA's actions in tendering the $50,000 UIM payment subject a release of claims were contrary to Arizona law. CSAA should have tendered benefits unconditionally once it determined coverage, liability and damages. The release of claims, as written by CSAA, potentially included waiver of any stacked benefit pursuant to A.R.S. § 20-259.01(H). Under the policy terms, at a minimum, CSAA undisputedly owed the UIM limit on at least one covered vehicle. Plaintiff, therefore, would have received no consideration or extra benefit in exchange for signing the release of all claims.

41. When Plaintiff declined to sign the "Release of Underinsured Motorist Coverage," CSAA responded that same day: "We always ask for a Release but it is certainly not required. We will issue the check to you on this matter." *See* Exhibit 8.

42. The CSAA Policy under which Plaintiff's decedent was insured is CSAA's standard form Policy.

43. The CSAA Policy fails to include a statement informing the insureds of their right to select one coverage as applicable to any one accident.

44.   The CSAA Policy does not comply with A.R.S. § 20-259.01(H) because (a) it does not limit the UM/UIM coverage on each covered vehicle so that only one coverage, selected by the insured, shall be applicable to any one accident, and (b) it does not inform the insured of their right to select one UM/UIM coverage, as between multiple vehicles insured under the CSAA Policy, in the event of a covered accident. It merely states that Underinsured Motorist Coverage is available "[s]ubject to the Limits of Liability shown on the Dec Page":

> **INSURING AGREEMENT-UNDERINSURED MOTORIST COVERAGE**
>
> Subject to the Limits of Liability shown on the **Dec Page**, if **you** pay a premium for Underinsured Motorist Coverage, **we** will pay for **net damages**, other than **punitive damages**, which an **insured person** is legally entitled to recover from the **owner** or operator of an **underinsured motor vehicle** because of **bodily injury**:
> 1. sustained by an **insured person**;
> 2. caused by **accident**; and
> 3. arising out of the **ownership**, maintenance, or use of an **underinsured motor vehicle**.

45.   Similarly, the Declarations Page merely lists the two UM/UIM coverage limits and the separate premiums charged for the coverage associated with each vehicle:

| COVERAGES | LIMIT OF LIABILITY | VEHICLE INFORMATION | | | |
|---|---|---|---|---|---|
| | | 1 | DED | 2 | DED |
| Bodily Injury | $50,000 / person $100,000 / accident | 256.00 | | 298.00 | |
| Property Damage | $100,000 / accident | 220.00 | | 256.00 | |
| Uninsured Motorist BI | $50,000 / person $100,000 / accident | 16.00 | | 23.00 | |
| Underinsured Motorist BI | $50,000 / person $100,000 / accident | 35.00 | | 51.00 | |

46. Elsewhere, the CSAA Policy states that the insured may elect UM/UIM benefits between multiple policies but it does not state that the insured may elect between different coverages within the same Policy:

> Notwithstanding any other provision in this policy, if **you** purchase multiple policies from **us**, or an affiliated company on different **cars**, **you** are entitled to uninsured or underinsured motorist benefits under only one (1) of those policies. The policy with the highest limit of liability shall apply unless **you** elect to apply a different policy.

47. CSAA also did not, within thirty days of being notified of the accident at issue here, send any insured under the CSAA Policy, including Plaintiff, any written notice of their right to select one policy or coverage.

48. As a general practice, CSAA does not advise its insureds in writing within 30 days after CSAA received notice of the accident, of their right to select one UM/UIM coverage to apply to the accident under the CSAA Policy.

49. These were simple options – informing the insureds of their rights in the policy itself or by written notice after the accidents – only one of which CSAA was required to take to avoid stacking the UM/UIM coverages on the vehicles covered under Plaintiff's CSAA Policy.

50. CSAA, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the CSAA Policy.

51. CSAA never disclosed or provided stacked UIM coverages to Plaintiff Franklin. CSAA, therefore, has denied Plaintiff Franklin benefits to which she is entitled under the CSAA Policy and Arizona law.

52. As a general practice, CSAA does not disclose or provide stacked UM/UIM coverages to its insureds under the CSAA Policy after a covered accident.

53. CSAA knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

54. CSAA knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

55. CSAA chose not to comply with those requirements.

56. Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, USAA, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right to select which policy or coverage will apply.[3] For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

57. Other insurers (*e.g.*, Safeco) notify their insureds in writing of the right to select which policy or coverage will apply, by letter within 30 days after notice of an accident. *See* Exhibit 9.

58. CSAA knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

59. CSAA chose not to follow those practices.

60. CSAA failed to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the CSAA Policy.

---

[3] See policy excerpts attached as Exhibit 10.

61. On information and belief, CSAA willfully failed to investigate and inform itself and its insureds of Arizona law on stacked UM/UIM coverages, or alternatively, it disregarded legal advice it received.

62. CSAA failed to pay Plaintiff stacked UM/UIM coverages to which she is entitled.

63. CSAA and its agents failed to investigate, identify, acknowledge and disclose stacked UM/UIM coverages under the CSAA Policy, pursuant to the Arizona Administrative Code § 20-6-801(D)(1) and (D)(2).

64. CSAA's failures are both unreasonable and in conflict with well-established Arizona law.

65. CSAA's failures also violate its duty to find coverage, to conduct a reasonable investigation of the claim, and disclose and not to misrepresent pertinent policy provisions.

66. CSAA's unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages has led to underpaying Plaintiff's UM and UIM claim, as well as the claims of many other CSAA insureds.

67. CSAA also has a standard claim-handling practice of tendering undisputed UM or UIM payments subject to a release of claims. CSAA does so, despite knowing it cannot lawfully condition payment of undisputed policy benefits on the insured releasing claims. Any such release is void for lack of consideration and violation of A.R.S. § 20-259.01 and violated the implied covenant of good faith and fair dealing and Arizona statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2).

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

68. Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

69. Plaintiff has standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the CSAA Policy under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, CSAA's obligation to disclose the existence of stacked UM/UIM coverages, and whether Plaintiff is entitled to stack UM/UIM coverages for multiple insured vehicles.

70. Under the circumstances, Plaintiff is entitled to a judicial declaration of her rights under the CSAA Policy, specifically that she is entitled to stack UM/UIM coverages for multiple insured vehicles under the CSAA Policy, and that CSAA was required to disclose the existence of stacked coverages to her.

71. This claim arises out of contract and Plaintiff therefore is entitled to attorney's fees under A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

72. Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

73. The CSAA Policy formed a contract between CSAA and Plaintiff.

74. CSAA breached the contract by failing to identify, acknowledge, disclose and pay the stacked UM/UIM limits of the CSAA Policy under Arizona law, despite CSAA's failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

75. Plaintiff has been and continues to be damaged by CSAA's breaches of contract.

76. Plaintiff is not seeking a double recovery, but rather seeking stacked UM/UIM benefits to the extent of full compensation for her injuries. *Cf. State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 963 P.2d 334 (App. 1998) (insureds, who were paid their full damages under stacked State Farm UIM policies, were precluded from recovering duplicate damages under their other State Farm UIM policies).

77. This claim arises out of contract and Plaintiff therefore is entitled to her attorney's fees under A.R.S. § 12-341.01.

### THIRD CLAIM FOR RELIEF
### (BAD FAITH)

78. Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

79. Inherent and implied in the CSAA Policy is a covenant of good faith and fair dealing owed to Plaintiff. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

80. The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. at 160, 726 P.2d at 576.

81. The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading. *See, e.g., Nardelli v. Metro. Grp. Prop.*

*and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman,* 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

82. CSAA acted objectively and subjectively unreasonably as to Plaintiff by failing to identify, acknowledge, disclose and pay benefits up to the stacked UM/UIM limits of the CSAA Policy.

83. CSAA failed to identify, acknowledge and disclose stacked UM/UIM coverages under the CSAA Policy, pursuant to the Arizona Administrative Code § 20-6-801(D)(1) and (D)(2).

84. CSAA failed to tender the stacked UM/UIM coverages under the CSAA Policy.

85. CSAA denied the existence of the stacked UM/UIM limits under the CSAA Policy, despite CSAA's failure to comply with A.R.S. § 20-259.01(H).

86. CSAA denied the existence of the stacked UM/UIM limits, despite the fact that it knew or should have known the CSAA Policy failed to comply with A.R.S. § 20-259.01(H).

87. Plaintiff has been and continues to be damaged by CSAA's breaches of the implied covenant of good faith and fair dealing, including breach of its obligations of investigation, disclosure, equal consideration, and indemnity.

88. CSAA's conduct was aggravated, outrageous and consciously disregarded and unjustifiably substantial risk of significant harm to Plaintiff. CSAA is, therefore, liable for punitive damages.

89. This claim arises out of contract and Plaintiff therefore is entitled to attorney's fees under A.R.S § 12-341.01.

90. Plaintiff demands a jury trial pursuant to Federal Rules of Civil Procedure 38.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff prays for judgment against CSAA as follows:

A. A declaratory judgment that Plaintiff is entitled to stacked UM/UIM coverages under the CSAA Policy, and that Plaintiff is entitled to disclosure of the existence of stacked coverages.

B. Compensatory damages in an amount to be proven at trial.

C. Punitive damages in an amount to be proven at trial.

D. Attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

E. For costs incurred herein.

F. Pre-judgment and post-judgment interest.

G. For any other relief permitted by Law.

DATED this 4th day of April, 2022.

**GOLDSTEIN WOODS & ALAGHA**

By *s/ Evan Goldstein*
    Evan Goldstein
706 E Bell Rd., Ste. 200
Phoenix, AZ 85022
Telephone: 602.569.8200
Email: egoldstein@gwalawfirm.com

**GUIDANT LAW PLC**

By *s/ Sam Saks*
    Sam Saks
402 E Southern Avenue
Tempe, AZ 85282
Telephone: 602.888.0725
Email: sam@guidant.law
*Attorneys for Plaintiff*