THE CAVANAGH LAW FIRM
A Professional Association
1850 NORTH CENTRAL AVENUE
SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000
www.cavanaghlaw.com

William M. Demlong, Esq. (SBN 012458)
wdemlong@cavanaghlaw.com
Parker C. Bunch, Esq. (SBN 034126)
pbunch@cavanaghlaw.com
Tel:  (602) 322-4000

Kymberly Kochis (Admitted pro hoc vice)
**EVERSHEDS SUTHERLAND (US) LLP**
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 389-5068
Facsimile:  (212) 389-5099
kymkochis@eversheds-sutherland.com

*Attorneys for Defendant CSAA*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kay Franklin, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CSAA General Insurance Company,<br><br>Defendant. | No. CV-22-00540-JJT<br><br>**MOTION TO CERTIFY QUESTIONS TO THE ARIZONA SUPREME COURT** |

Defendant CSAA, pursuant to A.R.S. § 12-1861 and Ariz. Sup. Ct. Rule 27, moves this Court to certify the following questions ("Certified Questions") to the Arizona Supreme Court:

1. Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist ("UIM") coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?

2. Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

This Motion is supported by the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.  INTRODUCTION

Central to this putative class action are issues of statutory interpretation of Arizona's Underinsured and Uninsured Motorist Act ("UMA") for which there is no Arizona precedent. The only on-point authority is an unpublished District Court decision in which that Court recognized the Arizona Supreme Court has not addressed the issues raised in the Certified Questions. That decision, as well as other non-precedential or distinguishable cases, form the basis of Plaintiff's claims in this lawsuit and substantively similar putative class actions filed against other insurers by Arizona insureds. The Certified Questions fundamentally affect the application of UIM and UM coverage across Arizona and are unquestionably of statewide importance. Plaintiff must prevail on both Certified Questions to proceed on her intra-policy stacking claim. Certification of these questions is proper under A.R.S. § 12-1861 and Ariz. Sup. Ct. Rule 27.

### II. FACTUAL BACKGROUND

CSAA's named insured Kathy Bernhardt was tragically killed in an accident with tortfeasor John Rowland. Ms. Bernhardt and Mr. Rowland were the only individuals involved in the accident. Mr. Rowland was insured by GEICO. Ms. Bernhardt's daughter, Plaintiff Kay Franklin, made a liability claim against Mr. Rowland's GEICO policy. GEICO tendered its $25,000 per-person liability limits.

Ms. Franklin then submitted an underinsured motorist (UIM) claim to CSAA under her mother's policy ("Policy"). CSAA's Policy provides UIM coverage in the amount of $50,000 per person. Because Ms. Bernhardt was the only insured person involved in the accident, CSAA paid Ms. Franklin the $50,000 per person UIM limit. Thereafter, Plaintiff requested CSAA pay a second $50,000 UIM limit because Ms. Bernhardt insured a second vehicle under the Policy.

2

Plaintiff contends that by insuring a second vehicle under the Policy, the Policy provides a separate, second UIM coverage for that vehicle. Plaintiff claims she may "stack" these allegedly separate coverages under A.R.S. § 20-259.01(H). CSAA declined her request and this lawsuit ensued.

## III.   LEGAL STANDARD

The Arizona Supreme Court may answer questions of law certified to it by this Court if: (1) there are state questions of law that may determine the case in the certifying court, and (2) it appears to the certifying court that there is no controlling precedent from the Arizona Supreme Court or Court of Appeals. A.R.S. § 12–1861. To determine whether certification is appropriate, the Court "looks to factors such as the complexity of the issue, the availability of precedent from lower courts or other jurisdictions, and the magnitude of disagreement on the issue." *Atl. Specialty Ins. Co. v. Teller*, 224 F. Supp. 3d 844, 848 (D. Ariz. 2016).

## IV.   LEGAL ARGUMENT

### A. Both Certified Questions Are Unresolved Questions Of Law That Require Arizona Supreme Court Resolution.[1]

The first certified question seeks a determination of the number of UIM coverages provided by the Policy under the UMA. Plaintiff contends that by insuring two vehicles under a single policy providing UIM coverage, the Policy provides two separate UIM coverages—one UIM coverage per insured vehicle—that can be "stacked." FAC at ¶¶ 79-80 (Declaratory Judgment); *Id*. at ¶ 84 (Breach of Contract); *Id*. at ¶¶ 92-96 (Bad Faith).

CSAA, however, consistent with A.R.S. § 20-259.01, contends the Policy does not provide separate UIM coverages for each insured vehicle, but rather provides one UIM coverage with limits of $50,000 per insured person. Ms. Franklin was the only insured person involved in the accident. The number of insured vehicles is irrelevant under A.R.S. § 20-259.01. Resolving the statutory interpretation of the UMA affects not only the parties in this

---

[1] While Plaintiff must prevail on these two issues to sustain her claims, resolution of these two issues against CSAA is not dispositive of CSAA's liability.

litigation but also parties in other currently pending lawsuits as well all other Arizona insurers and insureds with multiple vehicles insured under a single policy.

The second certified question involves the interplay of Subsections (B) and (H) of the UMA. Subsection (B) sets forth the contours and limitations of UIM coverage in Arizona. For example, Subsection (B) mandates a policy may only provide UIM coverage up to the policy's liability limits. Subsection (B) also states UIM coverage applies to insured persons. The number of insured vehicles is irrelevant under Subsection (B). CSAA's Policy provides the same liability limits as UIM limits: $50,000 per person. The resolution of the second certified question will determine whether, under Subsection H of the UMA, Plaintiff—or any other similarly situated insured—can recover UIM benefits in excess of a policy's liability limits.[2]

### B. The Issues Presented Are of Statewide Importance.

The Certified Questions turn on the interpretation of A.R.S. § 20-259.01. The UMA is strictly enforced by Arizona courts. *Melendez v. Hallmark Ins. Co*., 232 Ariz. 327, 330, 305 P.3d 392, 395 (Ct. App. 2013), *as amended* (June 11, 2013) ("[W]e require strict compliance with A.R.S. § 20–259.01.") (citing *Blevins v. Gov't Emps. Ins. Co*., 227 Ariz. 456, 459–60, 258 P.3d 274, 277–78 (Ct. App. 2011) ("To effectuate the legislature's intent, we have required strict compliance with the statute.").

The statewide importance of resolving the Certified Questions is both apparent on their face and supported by the fact that these issues are being currently litigated in other active lawsuits. In fact, this Court alone has another putative class action pending before it that will require resolution of the Certified Questions. *See* FAC [Dkt. 15] and *compare with Doyle v. Pekin Ins. Co.*, Case No. 2:2022-cv-00638-JJT, [Dkt. 12]; *see also Cardoza v. Acuity Ins. Co.*, Case No. Case 2:21-cv-00448-JJT, [Dkt. 1]. These cases are premised on the same issues set forth in the Certified Questions, the resolution of which will fundamentally impact the application of UM and UIM coverage in Arizona.

---

[2] Moreover, the magnitude of the disagreement over this issue is obvious – the parties offer diametrically opposite legal interpretations.

4

This Court has previously certified questions regarding the interpretation of the UMA, which the Arizona Supreme Court accepted. *Am. Fam. Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 488, ¶¶ 2-3, 277 P.3d 192, 193 (2012). Certification is warranted here for the same reasons.

### C. There Is No Published Arizona Appellate Precedent that Addresses the Certified Questions.

The only court to directly address a fact scenario that implicates the Certified Questions is an unpublished federal court case that expressly acknowledged the absence of Arizona Supreme Court precedent. *Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. CV-21-00442-PHX-SRB, 2021 WL 6805629 (D. Ariz. Oct. 19, 2021). There is no published Arizona Supreme Court precedent that directly addresses the Certified Questions.

#### 1. *Heaton* recognized there is no controlling Arizona Supreme Court precedent.

As noted, the *Heaton* Court itself acknowledged that the case "presents a situation that has not yet been addressed by the Arizona Supreme Court: a single, multi-vehicle policy that allegedly only provides a single UM and UIM coverage that is shared by all the listed vehicles." *Id*. No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *5 (D. Ariz. Oct. 19, 2021).

Heaton was the only insured person involved in an accident with a UIM tortfeasor. *Id*. at *1. Heaton recovered the full $25,000 per person limits of the tortfeasor's liability policy and submitted a UIM claim to Metropolitan. *Id*. The policy's declarations pages stated the policy provided $100,000 per person in UIM coverage. *Id*. However, Heaton argued that because she insured four vehicles under the Metropolitan policy, each vehicle had "its *own* UIM coverage of $100,000 per person." *Id*. (italic emphasis original). Heaton asked Metropolitan to stack the "allegedly separate UIM coverages." *Id*. Metropolitan paid Heaton the $100,000 per person UIM benefits and declined her claim for stacked coverage "on the

basis that the Heaton Policy did not contain multiple UIM coverages, but rather just one UIM coverage that applied to all listed vehicles." *Id*.[3]

The plaintiffs in *Heaton* "set forth one primary argument as to why both the Heaton Policy and the Bell Policy provide multiple coverages: that, given the historical development of the UMA, particularly its 1997 amendments and relevant caselaw, the UMA and Arizona public policy dictate that individual policies providing UM/UIM coverage on multiple vehicles necessarily provide multiple coverages under the statute." *Id*. at *4.[4] The purported relevant caselaw included *Hoelbl*, *Tucker*, and *Sharp*, but none of these cases address the Certified Questions presented here.

      **a.  *Sharp*, *Hoelbl*, and *Tucker* are inapposite and/or non-precedential.**

In 2012, the Arizona Supreme Court in *Sharp* ruled an insured who purchased two separate policies from the same insurer can collect the <u>liability</u> coverage of one policy and <u>UIM</u> coverage provided by the second policy. *American Family Mutual Insurance Co. v. Sharp*, 229 Ariz. 487, 489, ¶ 4, 277 P.3d 192, 194 (2012) (emphasis added). In *Hoelbl v. GEICO Gen. Ins. Co.*, No. 1 CA-CV 11-0703, 2012 WL 5589909 (Ariz. Ct. App. Nov. 15, 2012), the Arizona Court of Appeals extended the ruling in *Sharp*, finding that an insured could recover under both the <u>liability</u> coverage and <u>UIM</u> coverage in a single auto policy. *Hoelbl*, at *5, ¶¶ 16-18. But both *Hoelbl* and *Sharp* involved different legal questions than those presented in the Certified Questions. Neither case involved a plaintiff seeking to "stack" allegedly separate UIM coverages under a single policy. Rather, *Hoelbl* and *Sharp* addressed whether an insured could recover both <u>liability</u> coverage and <u>UIM</u> coverage, which are distinct, separate "coverages" and <u>liability coverage is not controlled by A.R.S. § 20–259.01</u>. *Sharp*, 229 Ariz. at 492, ¶ 17, 277 P.3d at 197 ("we have repeatedly recognized that liability insurance is distinct from first-party

---

[3] *Heaton* also involved claims by a second plaintiff, Bell, who was the only insured person – under a policy insuring two vehicles - involved in an accident with a single uninsured (UM) tortfeasor. *Id*. at *2.

[4] Attached as **Exhibit 1** is the *Heaton* briefing.

6

UIM coverage."); *Id*. at 491, ¶ 14, 277 P.3d at 196 ("The only types of coverage addressed in the UMA, including Subsection (H), are UM and UIM."). Furthermore, *Hoelbl* is not precedential and cannot be cited in Arizona state court pursuant to Rule 111(c)(1)(C), Ariz. R. Sup. Ct., because it is a memorandum decision issued before January 1, 2015.

*GEICO Gen. Ins. Co. v. Tucker*, 71 F. Supp. 3d 985 (D. Ariz. 2014), involved the same facts and legal issues as *Hoelbl* and is therefore also inapposite. Like Hoelbl, Tucker did not seek to "stack" allegedly separate UIM coverages under the GEICO policy. *Id*. at 987. Further, Judge Snow in *Tucker* expressly noted there was no Arizona Supreme Court precedent on point, but that the *Hoelbl* Court had addressed "this exact issue." *Id*. at 988 (citing *Hoelbl*).

    **2. The Arizona Supreme Court needs to address the limitations on UIM coverage in UMA Subsections (B) and (G).**

A cardinal rule of statutory interpretation is that courts must, if possible, "'give meaning to each clause and word in the statute or rule to avoid rendering anything superfluous, void, contradictory, or insignificant.'" *Devenir Assocs. v. City of Phx*., 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991). Indeed, "[i]f the statutory language is clear and unambiguous, we should not look beyond that language but simply apply it on the assumption that the legislature meant what it said." *Melendez*, 232 Ariz. at 305, 305 P.3d at 395 (citation omitted). While the UMA has a remedial purpose, *Taylor*, 9 P.3d at 1053, it cannot be interpreted in a way that vitiates the express language of Subsections (B) and (G). *Devenir*, 169 Ariz. at 503.

While the Court in *Heaton* interpreted Subsection (H), it did so without analyzing or harmonizing Subsection (H) with the Legislature's mandates in Subsections (B) and (G). This Motion should be granted to allow the Supreme Court to address this important question.

    **a. Subsections (B) and (G) provide the contours and limits of UIM coverage.**

Subsection (B) sets forth the Legislature's mandates regarding the offer, acceptance, and maximum limits of UIM coverage under a single policy. Subsection (G), which provides the circumstances in which UIM coverage applies, expressly refers to Subsection (B) as providing

the contours of UIM coverage. ("To the extent that the total damages exceed the total applicable liability limits, <u>the underinsured motorist coverage provided in subsection B of this section</u> is applicable to the difference.") (Emphasis added). Subsections (B) and (G) express several Legislative mandates regarding the contours and limitations of UIM coverage.

First, Subsections (B) or (G) never refer to "insured vehicles," let alone provide that the number of insured vehicles determines the number of UIM coverages provided under a single policy. Subsection (B) and (G) only use "underinsured motorist coverage" in the singular. In fact, no provision in A.R.S. § 20–259.01 refers to multiple UIM or UM coverages. The only reference to "coverages" is to UIM coverage and UM coverage in the conjunctive. *See*, *e.g.*, A.R.S. § 20–259.01(C) ("Any insurer writing automobile liability or motor vehicle liability policies may make available <u>the coverages required by subsections A and B of this section</u>…"); Subsection (H) ("<u>Uninsured and underinsured motorist coverages</u> are separate and distinct…") (emphasis added).

Second, Subsection (B) provides the touchpoint for UIM coverage is insured <u>persons</u>, not insured vehicles. (A.R.S. § 20–259.01(B) (emphasis added) ("underinsured motorist coverage that extends to and <u>covers all persons</u> insured under the policy…"); (".... the named insured may purchase and the insurer shall then include within the policy underinsured motorist coverage that extends to and <u>covers all persons</u> insured under the policy…"). The Arizona Supreme Court has stated that UIM coverage protects the insured persons, not the insured vehicles. *Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 23, 770 P.2d 324, 327 (1989) (other citations omitted) ("… uninsured and underinsured motorist coverages protect and follow the person, not the vehicle …"); *Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 296, 697 P.2d 684, 689 (1985) (same). The number of insured vehicles is irrelevant.

Finally, Subsection (B) states an insurer cannot offer, the insured cannot request, and the insurer cannot provide UIM coverage in an amount that exceeds the liability limits of the policy. ("…At the request of the named insured, the named insured may purchase and the insurer shall then include within the policy underinsured motorist coverage that extends to and

8

covers all persons insured under the policy in any amount authorized by the insured <u>up to the liability limits for bodily injury or death contained within the policy</u>.") (emphasis added). The Arizona Supreme Court determined the function of Subsection (B)—then applicable to UM coverage—is to "allow[] the driver to protect himself and his passengers—most often his own family and friends—from the loss by injury caused by uninsured drivers **to the same extent that he protects others from the risk of his own negligence**." *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 192–93, 731 P.2d 84, 87–88 (1986) (bold emphasis added). Consistent with that statement, the Arizona Supreme Court has interpreted Subsection (B) to unambiguously state an insurer cannot provide UIM coverage limits that exceed the policy's liability limits. *Duran v. Hartford Ins. Co.*, 160 Ariz. 223, 223, 772 P.2d 577, 577 (1989) (emphasis added) ("In Arizona, every insurer writing automobile liability policies must also include, at the insured's option, UIM coverage in an amount <u>up to</u> the limits contained in the liability coverage."); *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 193, 731 P.2d 84, 88 (1986) (same); *see Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109, 112, 859 P.2d 732, 735 (1993) ("…the statute links the amount of uninsured/underinsured coverage to the amount of liability coverage…").

### b. Arizona law imputes Subsections (B) and (G) into every liability policy.

The Arizona Supreme Court has held the UMA's provisions are imputed into every Arizona liability policy. *Ins. Co. of N. Am. v. Superior Ct. In & For Cnty. of Santa Cruz*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990) ("*Santa Cruz*") (citation omitted) ("[t]he terms of Arizona's uninsured motorist legislation are a part of every liability policy issued in Arizona."). When the Arizona Supreme Court imputes the UIM coverage set forth in Subsection (B), it does so <u>up to that policy's liability limits</u>. The number of insured vehicles is irrelevant.

For example, in *Santa Cruz*, the Court, analyzing then-Subsection (B), recognized "an insurer shall offer the insured an amount of uninsured coverage <u>equal to the liability limits</u> for bodily injury. The use of the word 'shall' indicates a mandatory intent by the legislature." *Id*.

9

at 85, 800 P.2d at 588 (emphasis added).[5] The *Santa Cruz* Court determined the consequence of failing to follow this mandate: "[w]hen an insurer's statutory obligation to provide or offer certain coverage is mandatory, the proper remedy is to include the coverage in the policy by operation of law." *Id*. The amount of UM coverage imputed into the policy is "usually in an amount <u>equal to the bodily injury liability limits of the policy</u>…" *Id*. at 85, 800 P.2d at 588 (emphasis added) (collecting cases in fn. 2). The number of insured vehicles was irrelevant.

The Arizona Supreme Court reiterated this holding in *Est. of Ball By & Through Sayre v. Am. Motorists Ins. Co.*, 181 Ariz. 124, 126, 888 P.2d 1311, 1313 (1995) ("*Ball*"). Ms. Ball worked for Fleming, a corporation that operated 3,000 cars in at least 20 states. *Id*. at 124, 888 P.2d at 1312. She was killed by a UIM driver while she was driving a Fleming company car. *Id*. Because the insured requested only "statutory" minimum UIM coverage and Arizona did not require UIM coverage, the Fleming policy did not provide UIM coverage. *Id*. Fleming asked the *Ball* Court to impute UIM coverage into the policy equal to the policy's $3 million liability limits. *Id*. Relying on *Santa Cruz*, the *Ball* Court agreed, reiterating that when the coverage required by the statute is imputed, it is "usually in an amount equal to the bodily injury liability limits of the policy…" *Id*. (citing *Santa Cruz*, 166 Ariz. at 85, 800 P.2d at 588). As in *Santa Cruz*, the number of insured vehicles on the policy in *Ball*—up to 3,000—were irrelevant to the Court's analysis of what UIM coverage was set forth in Subsection (B).

Under Subsection (B) and Arizona Supreme Court jurisprudence, whether through the insured's selection of limits or via post-claim reformation, a policy may only provide UIM and UM coverage <u>up to</u> the limit of liability in the policy.

Despite these unambiguous statutory limitations, the *Heaton* Court did not consider Subsection (B) in its analysis. Instead, the *Heaton* Court concluded that under Subsection (H) the Heaton policy provided separate $100,000 UIM coverages for each of the four insured

---

[5] This mandate remains. A.R.S. § 20-259.01(A) (addressing UM) and (B) (addressing UIM).

vehicles. The policy thus provided up to $400,000 in UIM coverage despite only providing $100,000 in liability coverage. *Heaton* at *8.

Under this rationale, there is no limit to the amount of UIM coverage an insured can purchase so long as they keep insuring additional vehicles under the policy. The UIM limits stated in the declarations page are effectively meaningless, rather than constituting "the final expression" of the insured's decision to purchase UIM coverage under Subsection (B) and the policy's liability limits are made irrelevant. The *Heaton* Court ruled that Ms. Heaton's policy provided $400,000 in UIM coverage—four times more than the liability limits.

This rationale becomes even more questionable if applied to *Ball*. There, the insured business operated 3,000 vehicles in 20 states. *Ball*, 181 Ariz. at 124, 888 P.2d at 1311. The policy had liability limits of $3 million. *Id*. at 181 Ariz. at 125, 888 P.2d at 1312. Under *Heaton*'s rationale, each of the 3,000 insured vehicles would have a separate UIM coverage providing $3 million in coverage. These 3,000 separate UIM coverages could then be stacked to provide up to **$9 billion** in UIM coverage. *Heaton*'s rationale and conclusion vitiates Subsection (B)'s mandate that a policy may provide UIM coverage <u>up to</u> the liability limits.

### 3. The only published Arizona Court of Appeals case to consider intra-policy stacking rejected it.

In *Hampton v. Allstate Insurance Co.*, the Arizona Court of Appeals considered whether an insured could stack allegedly separate UM coverages on three vehicles insured under one policy. 126 Ariz. 403, 616 P.2d 78 (Ariz. Ct. App. 1980). The *Hampton* court concluded that the policy's limit of liability clause, in conjunction with the policy as a whole, "clearly limits Allstate's liability for damages to any one person as a result of one accident under the uninsured motorist provisions to the sum of $15,000 and the fact that three vehicles are described and three premiums charged does not warrant construing policy to allow stacking." *Id*. at 405, 616 P.2d at 80. The *Hampton* Court framed claims for intra-policy stacking as "a misconception as to the coverage afforded under the uninsured motorist provisions. There is no double coverage." *Id*. at 404, 616 P.2d at 79.

11

*Heaton* distinguished *Hampton* on the grounds that "liability clauses effectively prevent intra-policy stacking" in violation of Subsection (H) and because *Hampton* predated "both the original and amended versions" of Subsection (H). *Heaton*, at *7. No Arizona appellate court has given guidance as to whether *Hampton* remains good law. Instead, over the course of 42 years, *Hampton* has never been formally limited or overruled by an Arizona appellate court. Certification of these issues is appropriate in order for the Arizona Supreme Court to resolve whether *Hampton* remains binding precedent.

**D. Certification of these Questions Is Proper**

As the *Heaton* Court recognized, the Arizona Supreme Court has not addressed the issues of Arizona statutory interpretation set forth in the Certified Questions. The only published Arizona Court of Appeals decision to consider (and reject) a claim for intra-policy stacking, *Hampton*, has not been overruled. There is no controlling precedent on these issues. Additionally, the parties here offer diametrically opposing interpretations of the UMA. Thus, there is significant disagreement regarding how the UMA should be interpreted and applied.

Next, the issues raised in the Certified Questions are plainly of statewide importance. They affect, at a fundamental level, the application of UM and UIM coverage across Arizona. These issues also form the basis for multiple lawsuits in this Court, including class actions. As in *Sharp*, certification of these questions is proper. *Sharp*, 229 Ariz. at 488, ¶¶ 2-3, 277 P.3d at 193; *Benson v. Casa de Capri Enterprises, LLC*, 980 F.3d 1328, 1332 (9th Cir. 2020) (citing *Fast Trak Inv. Co., LLC v. Sax*, 962 F.3d 455, 468 (9th Cir. 2020)) ("In the absence of any apparent controlling precedent, and out of respect for Arizona courts and their preeminent role in interpreting Arizona law, we believe it 'most suitable' to certify this issue to 'the highest court of the state whose law is in question.'").

. . .

. . .

. . .

## V. CONCLUSION

CSAA requests this Court certify the foregoing questions to the Arizona Supreme Court.

RESPECTFULLY SUBMITTED this 15th day of August, 2022.

          **THE CAVANAGH LAW FIRM, P.A.**

          By:    s/Parker C. Bunch
               William M. Demlong
               Parker C. Bunch
               1850 North Central Avenue, Suite 2400
               Phoenix, Arizona 85004

          **EVERSHEDS SUTHERLAND, L.L.P.**

          By:    s/Kymberly Kochis
               Kymberly Kochis
               1114 6th Ave.
               New York, NY 10036
               Attorneys for Defendant CSAA

## CERTIFICATE OF SERVICE

I hereby certify that on 15th day of August, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Evan S. Goldstein, Esq.
GOLDSTEIN WOODS & ALAGHA
706 East Bell Road, Suite 200
Phoenix, Arizona 85022
Attorneys for Plaintiff
egoldstein@gwalawfirm.com

Robert B. Carey, Esq.
John M. DeStefano, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson St., Ste. 1000
Phoenix, Arizona 85003
rob@hbsslaw.com
johnd@hbsslaw.com
Attorneys for Plaintiff

Sam Sacks, Esq.
GUIDANT LAW PLC
402 E. Southern Ave.
Tempe, Arizona 85252
sam@guidantlaw.com

      s/Lori Gilroy
_____